IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MILLARD E. PRICE,                          )
                                           )
              Plaintiff,                   )
                                           )
       v.                                  ) Civ. Action No. 08-444-GMS
                                           )
WARDEN MICHAEL E. DELOY and                )
CORRECTIONAL MEDICAL SERVICES, )
                                           )
              Defendants.                  )

## MEMORANDUM

## I. INTRODUCTION

The plaintiff, Millard E. Price ("Price"), who proceeds *pro se* and has been granted leave

to proceed without prepayment of fees, filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging

violations of his constitutional rights.  Price is incarcerated at the James T. Vaughn Correctional

Center ("VCC"), Smyrna, Delaware.  Before the court are several pending motions filed by the

parties as well as a motion for summary judgment filed by the defendant Correctional Medical

Services, Inc. ("CMS").  (D.I. 58, 65, 66, 75, 79, 83, 93, 94, 96.)  For the reasons that follow, the

court will grant CMS' motion for summary judgment, will deny Price's motions to compel, will

grant the defendant Michael Deloy's ("Deloy") motion to strike, but give Price leave to propound

additional interrogatories to Deloy, and will deny Price's motion for depositions upon written

questions.

## II. BACKGROUND

Price filed his complaint on July 17, 2008.  He alleges violation of his right to due

process and  equal protection because pretrial detainees at the Sussex Correctional Institution

("SCI") and the James T. Vaughn Correctional Center ("VCC") are housed in more burdensome conditions than convicted inmates. More particularly, he alleges that pretrial detainees are: (1) provided less medical and dental care than convicted inmates; (2) provided less visits per week than convicted inmates; (3) denied the opportunity to order foods items via the commissary when convicted inmates are provided full commissary rights; (4) not provided the same Christian services, bible study programs, and prayer meeting as afforded convicted inmates; (5) placed in lockdown status when convicted inmates are not; (6) denied yard/exercises privileges when convicted inmates are assigned recreation time; (7) housed in overcrowded conditions; (8) subjected to unhealthy conditions "via" the cafeteria; and (9) not provided the right to be tried by an impartial tribunal during disciplinary proceedings. (D.I. 10 ¶¶ II. A.- E., G., H., J.- L.) He also alleges that he was arbitrarily placed in segregation for no reason, that his grievances are ignored or discarded and, as a form of punishment, he was deprived of dinner on two occasions. (*Id.* at ¶¶ D., F., I.)

Upon screening, the court dismissed the grievance claims and all claims against the defendants Carl Danberg and Perry Phelps pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). (D.I. 18.) Plaintiff was allowed to proceed against CMS and Warden Michael E. Deloy ("Deloy") on the remaining claims.

## III. MISCELLANEOUS MOTIONS

### A. Request for Counsel

Price has filed a second request for counsel, opposed by CMS. (D.I. 58.) Price requests counsel on the grounds that: (1) counsel will benefit both he and the court; (2) the issues can be more clearly identified; (3) counsel will expedite the matter with a prehearing conference; (4)

counsel will make better use of discovery procedures; (5) he lacks the ability to present his case, is unskilled in the law, and cannot afford counsel; (6) he raises important constitutional questions that should not be taken lightly; and (7) the interests of justice will be better served.

A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel. *See Ray v. Robinson*, 640 F.2d 474, 477 (3d Cir. 1981); *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). However, representation by counsel may be appropriate under certain circumstances, if the court finds that Price's claims have arguable merit in fact and law. *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993).

The court considers a number of factors when assessing a request for counsel, including: (1) Price's ability to present his own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of Price to pursue investigation; (4) Price's capacity to retain counsel on his own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses. *Tabron v. Grace*, 6 F.3d at 155-57; *accord Parham*, 126 F.3d at 457; *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).

Upon consideration of the record, the court is not persuaded that the request for counsel is warranted at this time. In reviewing the record, Price appears to have the ability to present his claims and there is no evidence that prejudice will result in the absence of counsel. Indeed, Price is a certified paralegal. (D.I. 55, Pl.'s answer to interrog. 9.) More importantly, should the need for counsel arise later, the court may revisit the issue. Therefore, the court will deny without prejudice the request for counsel. (D.I. 58.)

### B. Discovery Motions

#### 1. Motions to Compel

Price moves to compel the defendants to respond to discovery served upon them. (D.I. 65, 66.) He also seeks sanctions. The defendants oppose the motions.

Pursuant to Fed. R. Civ. P. 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

The court docket reflects that Price served discovery requests upon Deloy on February 2, 2010. (D.I. 51, 52.) Because Price did not receive timely responses to the discovery, he filed the instant motion to compel. (D.I. 65.) Deloy explains that he received a copy of the discovery requests through the court's PACER system on February 2, 2010, but did not receive the paper copy until several days later. (D.I. 69.) The court docket indicates that Deloy responded to the discovery requests on March 23, 2010 and March 31, 2010. (D.I. 62, 67.) Price argues that the responses were filed late and are insufficient. (D.I. 71.)

Counsel for Deloy explains that the responses were late because counsel was waiting for verification from Deloy who was away from the prison for a time in March and to allow Deloy to provide substantive responses. Had counsel adhered to the Federal Rules of Civil Procedure and requested an extension of time to respond to discovery, the court's limited resources would not

be wasted on this discovery motion. The court has reviewed the discovery responses by Deloy and finds that he has adequately responded to the requests, albeit late, and, therefore, the court will deny the motion to compel. (D.I. 65.)

The court docket further reflects that Price served discovery requests upon CMS. (D.I. 48, 49.) CMS responded to the discovery requests, but Price claims its responses are "nothing short of being evasive, and in reality amounted to no answer at all." (D.I. 54, 55, 66.) Hence, his motion to compel against CMS. (D.I. 66.)

Price seeks documents regarding grievances he filed, but CMS advises the court that it has no such documents in its possession. CMS cannot produce what it does not have. Finally, while CMS objected to most of the discovery responses, it also responded to the requests and answered the interrogatories. The court has reviewed all responses and finds the responses adequate. For the above reasons, the court will deny the motion to compel. (D.I. 66.)

## 2. Interrogatories

On May 6, 2010, Price served upon Deloy a second set of interrogatories. (D.I. 74.) Deloy moves to strike the second set of interrogatories inasmuch as they exceed the number allowed by Fed. R. Civ. P. 33. (D.I. 79.) Price opposes the motion and filed a motion to submit additional interrogatories and requests for admission to the defendants. (D.I. 82, 83.) Both CMS and Deloy oppose Price's motion. (D.I. 87, 89.)

Pursuant to Fed. R. Civ. P. 33(a)(1), "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2). *Id.* The parties did not stipulate to interrogatories in excess of

twenty-five, nor did the court grant leave to file additional interrogatories. Accordingly, the court will grant Deloy's motion to strike Price's second set of interrogatories found at docket item 74. (D.I. 79.)

Price does not need leave to serve additional requests for admission. While he seeks leave to propound additional interrogatories, Price does not indicate the number of additional interrogatories he seeks to propound. As will be discussed, the court will grant CMS' motion for summary judgment. Therefore, with regard to CMS, the court will deny Price's motion to propound additional interrogatories.

Many issues remain against Deloy including that pretrial detainees are: (1) provided less visits per week than convicted inmates; (2) denied the opportunity to order foods items via the commissary when convicted inmates are provided full commissary rights; (3) not provided the same Christian services, bible study programs, and prayer meeting as afforded convicted inmates; (4) placed in lockdown status when convicted inmates are not; (5) denied yard/exercises privileges when convicted inmates are assigned recreation time; (6) housed in overcrowded conditions; (7) subjected to unhealthy conditions "via" the cafeteria; and (8) not provided the right to be tried by an impartial tribunal during disciplinary proceedings. Price also claims (9) arbitrary placement in segregation for no reason, and (10) the deprivation of meals on two occasions as punishment.

Due to the numerous issues raised against Deloy, the court will grant Price's motion to propound additional interrogatories upon Deloy. Price is given leave to propound five interrogatories per issue, for a total of fifty additional interrogatories (including supbarts).

Finally, the court will enter a scheduling order containing discovery and dispositive motion deadlines.

### 3. Motion to Take Deposition

Price moves the court to appoint a person before whom written depositions may be taken pursuant to Fed. R. Civ. P. 30. (D.I. 96.) Price seeks to depose thirteen individuals, most of whom are non-parties and many of whom are medical personnel. The only party Price seeks to depose is Deloy.

Because he seeks to depose non-parties, Price is required to subpoena them and pay witness and mileage fees to compel their attendance. Fed. R. Civ. P. 31; Fed. R. Civ. P. 45. The court has no authority to finance or pay for a party's discovery expenses. *Badman v. Stark*, 139 F.R.D. 601, 605 (M.D. Pa. 1991) (Section 1915 does not require the government to advance funds for deposition expenses); *Doe v. United States*, 112 F.R.D. 183, 184-85 (S.D.N.Y. 1986) (*in forma pauperis* statute does not require government to advance funds for deposition expenses); *Toliver v. Community Action Comm'n to Help the Econ.*, 613 F. Supp. 1070, 1072 (S.D.N.Y. 1985) (no clear statutory authority for the repayment of discovery costs for pro se *in forma pauperis* plaintiff); *Ronson v. Commissioner of Corr. for State of N.Y.*, 106 F.R.D. 253, 254 (S.D.N.Y. 1985) (indigent prisoner's motion to depose physician at corrections facility denied); *Sturdevant v. Deer*, 69 F.R.D. 17, 19 (E.D. Wis. 1975) (28 U.S.C. § 1915 "does not extend to the cost of taking and transcribing a deposition."); *Ebenhart v. Power*, 309 F. Supp. 660, 661 (S.D.N.Y. 1969) ("Grave doubts exist as to whether Section 1915 authorizes this court to order the appropriation of Government funds in civil suits to aid private litigants in conducting pre-trial discovery.").

It is Price's responsibility to pay for the costs associated with discovery, particularly from non-parties. In addition, as will be discussed, the court will grant CMS's motion for summary judgment. As a result, there is no need to depose medical personnel. Finally, the court has given Price leave to propound an additional fifty interrogatories upon Deloy. These additional interrogatories should be more than adequate to fulfill Price's discovery needs. For these reasons, the court will deny the motion to appoint a person before whom a deposition may be taken. (D.I. 96.)

## IV. SUMMARY JUDGMENT

### A. Standard of Review

A grant of summary judgment is appropriate only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). If the moving party has carried its burden, the nonmovant must then "come

forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). Moreover, "the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49 (internal quotation marks omitted).

CMS moves for summary judgment on the grounds that it did not enact any policy of deliberate indifference and Price was not treated differently from other inmates.[1] (D.I. 89.)

## B. Facts

Price's medical file indicates that he filed a sick call request on April 22, 2008, and was seen on April 23, 2008 by Nurse M. Ward ("Ward"). At that time, Price refused to be scheduled for a physical examination.[2] He was next seen by a nurse on June 20, 2008, who noted a right inguinal hernia, which was reducible upon palpation. She noted positive bowel sounds in all four quadrants and no complaints of bowel or bladder problems. A hernia belt was prescribed and Price was referred for follow-up. (D.I. 76.)

Price was seen by Nurse Practitioner Chuks ("Chuks") on June 24, 2008, who took note of the right inguinal hernia and indicated that Price had stable vital signs and no acute distress.

---

[1]Price filed a sur-reply with out leave of court, CMS moved to strike the sur-reply, and Price filed a motion for leave to file the sur-reply. (D.I. 90, 93, 94.) The court will deny the motion to strike and will grant Price's motion for leave to file the sur-reply. (D.I. 93, 94.)

[2]Price refused to schedule the examination because it would have been performed by Nurse Ward. (D.I. 81, Pl.'s aff. ¶ 13.)

Price complained of increased pain with long standing, but denied abdominal pain, vomiting, diarrhea, constipation, burning or pain with urination. The notes state that Price "wants 'operation' done." Chuks recommended a hernia belt (although Price was using one) and lab work. The medical notes indicate that a physician assessed the finding and ordered a hernia belt for Price. Price received and signed a receipt. Price presented at the clinic on December 5, 2008, but left before he could be seen by a physician. (D.I. 76.) According to Price, pretrial inmates are escorted everywhere and he did not leave medical on his own volition, apparently having been ordered to leave with an escort. (D.I. 81, Pl.'s aff. ¶ 14.)

Price submitted a grievance on June 30, 2008, complaining that he has a hernia and needed surgery, but was told by medical that he could not have surgery because he was not a sentenced inmate. (D.I. 81, ex. B.) The investigator stated that Price, "will be here for awhile on murder charges and we don't schedule appt. when you are in pretrial or B." (D.I. 66, grievance at 2.) Price appealed a "held" decision, stating that he received no written decision and was told to file an appeal. (D.I. 81, ex. D.) A hearing was held on October 21, 2008 and the next day it was recommended that medical check into an appointment for pretrial going for surgery and to schedule the inmate with a physician. (*Id.* at ex. C.) Price was informed on November 6, 2008 that he would be scheduled with a physician to determine if surgery was necessary, but subsequent to the hearing he had not been scheduled or seen by a physician to determine whether a hernia repair was required. (D.I. 66, grievance at 5.)

According to CMS, inmates with hernias are treated the same regardless of their status. They are given conservative treatment unless there is incarceration of the bowel or a threat

thereof. Both pretrial and sentenced inmates have the same access to healthcare. Price did not get surgery because it was not medically indicated. (D.I. 54, CMS answer to interrog. 4.)

According to Price, he has never been examined by a physician for his hernia condition. Price was told by unnamed CMS personnel between April 9, 2008 and June 16, 2008 that he needed hernia surgery, but could not receive it because he was not a sentenced inmate. After Price submitted medical grievances, when an informal resolution was sought, Price was advised that he could not have surgery because policy prohibited it. Medical was to check into an appointment for pretrial going for surgery and to schedule Price to see a physician, but he was not scheduled to see a physician. (D.I. 81, Pl.'s aff.)

CMS medical director, Dr. Lawrence McDonald ("Dr. McDonald") opines that Price's hernia is non-emergent and was treated appropriately with a hernia belt. He further opines that, if and when it becomes medically necessary, surgery will be performed. (D.I. 78, McDonald aff.)

Price submitted sick call slips and was seen by medical personnel subsequent to filing his complaint. Other than those discussed above, the records do not reflect that Price submitted sick call slips for treatment of the hernia or that he complained of the condition when he was seen by medical personnel. (D.I. 76, 85.)

Price's dental records indicate that he filed a sick call request on April 14, 2008, complaining that a lower left jaw tooth was bleeding and that he had sharp pain when eating or drinking. Price was seen and evaluated by dental assistant McMillan ("McMillan") on April 30, 2008, who referred Price to a dentist. On May 2, 2008, Price was seen by Christopher C. Forten, DDS ("Dr. Forten"). Dr. Forten diagnosed "gingivitis with mild gingival recession. Sensitivity will resolve over time. Bleeding gums means inflammation and means brush better."

(D.I. 76.) On June 13, 2008, Price complained to Deloy that he was told by dental that, as a

pretrial detainee, he could not have a cavity filled but that dental would extract the tooth.[3] (D.I.

81, ex. A.) No other dental records were submitted to the court.

CMS director of dental services, Arnold Mann, D.D.S. ("Dr. Mann") states that CMS'

dental policies with respect to the treatment of dental cavities do not distinguish between pre-trial

detainees and sentenced inmates. He further states that cavities are not treated with permanent

fillings until an inmate has been incarcerated for at least six months, regardless of whether the

inmate has been sentenced. (D.I. 78, Mann aff.)

## C. Discussion

### 1. Medical/Dental Needs for Pretrial Detainees

CMS argues that it did not enact any policy of deliberate indifference to Price's medical

needs. Price argues that there is insufficient discovery for the court "to make an intelligible

decision." In addition to his affidavit, Price relies upon grievances he filed to support his

position that CMS violated his constitutional rights.

When a plaintiff relies upon a theory of respondeat superior to hold a corporation liable,

he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v.*

*Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F.Supp.

1126, 1132 (D. Del. 1992). In order to establish that CMS is directly liable for the alleged

constitutional violations, Price "must provide evidence that there was a relevant [CMS] policy or

custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v.*

---

[3]In his sur-reply, Price states that he had teeth filled on September 29, October 27, and
November 30, 2009. In addition, his teeth were cleaned on October 30, 2009. (D.I. 90.)

*Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

When a pretrial detainee challenges the conditions of confinement in a state detention facility, the claim is analyzed under the Due Process Clause of the Fourteenth Amendment. *See Hubbard v. Taylor*, 399 F.3d 150, 157-58 (3d Cir. 2005). Courts have concluded that the Fourteenth Amendment affords pretrial detainees protections that are "at least as great as the Eighth Amendment protections afforded to a convicted prisoner." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Hence, when assessing medical claims by pretrial detainees, courts may apply the deliberate indifference standard established under the Eighth Amendment but must view the inquiry in the context of the *Bell v. Wolfish* standard, which applies Fourteenth Amendment due process principles and not the cruel and unusual punishment standard to pretrial detainees.[4] *See Hubbard v. Taylor*, 399 F.3d at 165-66. The deliberate indifference standard requires a finding of a serious medical need and acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale*, 318 F.3d at 582. A prison official may

---

[4]The Third Circuit has observed that nowhere in *Bell v. Wolfish*, 441 U.S. 520 (1979), did the Supreme Court suggest that if detainees are treated differently or worse than convicted inmates, they are *ipso facto* being "punished" in violation of the Due Process Clause. *Hubbard v. Taylor*, 558 F.3d 229, 236 (3d Cir. 2008). Rather, the issue is whether "a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective;" if so, it is irrelevant whether or not that condition is also imposed upon convicted inmates. *Id.* (internal citation omitted). Therefore, "conditions that are 'comparatively worse' or 'less comfortable' for pretrial detainees than for convicted inmates are not by themselves tantamount to punishment. *Id.*

manifest deliberate indifference by "intentionally denying or delaying access to medical care."

*Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). An inmate's claims against members of a prison

medical department are not viable under § 1983 where the inmate receives continuing care, but

believes that more should be done by way of diagnosis and treatment and maintains that options

available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429

U.S. 97, 107 (1976). Moreover, "a prisoner has no right to choose a specific form of medical

treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132,

138-140 (2d Cir. 2000). Finally, "mere disagreement as to the proper medical treatment" is

insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir.

2004) (citations omitted).

With regard to the hernia condition, the grievances seem to indicate a somewhat vague

policy of no surgery for pretrial inmates. Regardless, the medical records indicate that it was

Price, not medical personnel, who stated that he needed a hernia operation. Indeed, the medical

records do not recommend surgery. While Price claims he was not seen by a physician, he was

seen by a nurse practitioner whose notes do not indicate surgery was necessary. Moreover, Price

did not refute Dr. McDonald's expert opinion that hernia surgery was not medically necessary.

Price cannot survive the motion for summary judgment absent expert testimony that would

dispute Dr. McDonald's opinion. *See Aruanno v. Glazman*, 316 F. App'x 194 (3d Cir. 2009).

There is scant evidence with regard to the dental issue but, what evidence there is,

indicates that Price was given the option of having a tooth extracted, but not filled. Price did not

opt for the extraction, but he does not have the right to choose the type of treatment he desires.

The record does not support a finding of deliberate indifference to a serious medical or dental need. The surgery Price wants is not medically necessary.[5] Moreover, he was offered dental care, albeit not the care he wanted.[6] Inasmuch as the record does not support a finding of deliberate indifference, CMS cannot be liable based on the theory that it established or maintained an unconstitutional policy or custom responsible for violating Price's rights. *See Goodrich v. Clinton Cnty. Prison*, 214 F. App'x 105, 113 (3d Cir. 2007) (not published) (policy makers not liable in prison medical staff's alleged deliberate indifference to prisoner's serious medical needs, where, given that there was no underlying violation of prisoner's rights, policy makers did not establish or maintain an unconstitutional policy or custom responsible for violating prisoner's rights). A reasonable jury could not find that CMS' violated Price's constitutional rights with regard to medical or dental care.

For the above reasons, the court will grant CMS' motion for summary judgment on the issue of deliberate indifference to Price's medical and dental needs.

## 2. Equal Protection

CMS also moves for summary judgment on the grounds that Price was not treated differently than other inmates. Price argues that pretrial detainees are treated differently than sentenced inmates.

To the extent Price alleges a violation of the Equal Protection Clause, it states that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *City of*

---

[5]There is no indication that Price underwent hernia surgery at a later time.

[6]Price received several fillings in 2009.

*Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457

U.S. 202, 216 (1982)); *Artway v. Attorney Gen. of New Jersey*, 81 F.3d 1235, 1267 (3d Cir. 996).

"The Equal Protection Clause does not forbid classifications. It simply keeps governmental

decisionmakers from treating differently persons who are in all relevant respects alike."

*Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

To succeed on the equal protection claim, Price must demonstrate that he "received

different treatment from that received by other individuals similarly situated." *Chambers ex rel.*

*Chambers v. School Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009). He

must also show an intentional or purposeful discrimination. *Wilson v. Schillinger*, 761 F.2d 921,

929 (3d Cir. 1985). Once this intentional disparity in treatment is shown, the court will proceed

to determine whether the disparity can be justified under the requisite level of scrutiny. *See City*

*of Cleburne*, 473 U.S. 432, 439-40 (1985); *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982); *Price v.*

*Cohen*, 715 F.2d 87, 91-92 (3d Cir. 1983). Courts have consistently held that, in the absence of a

fundamental right or a protected class, equal protection only requires that a regulation which

results in unequal treatment of an inmate bear some rational relationship to a legitimate

penological interest. *See McGinnis v. Royster*, 410 U.S. 263 (1973); *Hodges v. Klein*, 562 F.2d

276 (3d Cir. 1977); *see also Shaw v. Murphy*, 532 U.S. 223, 225 (2001).

Here, the record does not support a finding of a violation of Price's right to equal

protection. There is no evidence of record that Price was treated differently than others who were

similarly situated and that the alleged unequal treatment was the result of intentional or

purposeful discrimination. Price, as a pre-trial detainee, avers that he was treated differently than

sentenced inmates. However, Price offered no evidence that he has been treated differently than

similarly situated persons, that is other pretrial detainees. *See Slade v. Hampton Roads Reg'l Jail*, 303 F. Supp. 2d 779 (E.D. Va. 2004) (detainee is not "similarly situated" to convicted inmates); *Moss v. Clark*, 886 F.2d 686, 691 (4th Cir .1989) (the class to which an inmate belongs consists of the persons confined as he is confined, and subject to the same conditions to which he is subject). Nor does the evidence of record suggest discriminatory intent.

No reasonable jury could find in favor of Price on the equal protection issue. Therefore, the court will grant CMS' motion for summary judgment on the issue of equal protection.

## V. CONCLUSION

For the above reasons, the court will grant CMS' motion for summary judgment, deny plaintiff's request for counsel and motions to compel, and will allow further discovery. The court will enter a scheduling order.

An appropriate order will be issued.

CHIEF, UNITED STATES DISTRICT JUDGE

_____June 17_____, 2011
Wilmington, Delaware